FRANK CARTER, Petitioner, v. CHARLES W. BOL-
STER, Judge, etc., et al., Respondents.

### Kansas City Court of Appeals, December 3, 1906.

1. **INSANE PERSONS: Property: Owner: Statutory Construc-
tion.** The words "property" and "owner" used in the statute
relating to insane persons, Section 3650, Revised Statutes 1899,
have their commonly accepted sense with the implied power of
sale and the alleged *non compos* must have property which he
had been controlling in the ordinary management of his bus-
iness.

2. ————:————:————:————: **Jurisdiction.** The property and
ownership must have been such that they would pass under the
control and supervision of the probate court, and an annuity
given to a trustee who is to apply the same to the necessities of
the alleged *non compos* as the discretion of the trustee should
dictate is not such property, and the probate court has no juris-
diction where the alleged *non compos* has no other kind of prop-
erty.

3. ————:————:————:————:————: **Trusteeship.** An an-
nuity of the kind described is not something acquired by the al-
leged *non compos* but is something cast upon him by the tes-
tator, and the possible abuse of such trusteeship or of the ina-
bility or death of the trustee cannot confer jurisdiction on the
probate court but may be reached through the powers of an
equity court.

4. ————: **Powers of Probate Court: Jurisdiction: Prohibition.**
While the probate court may have the right to pass upon facts
yet where the facts are not contested and there is only a ques-
tion of law arising from admitted facts, a writ of prohibition
may issue to a probate court seeking to appoint a guardian
for an alleged *non compos*; the fact that the court may have ju-
risdiction of a class of cases to which the case presented be-
longs and the aggrieved party has a right of appeal such appeal
is not always an adequate remedy and does not aways prevent
relief by prohibition.

### Original Proceeding by Prohibition.

WRIT GRANTED.

*E. C. Hall* and *W. S. Herndon* for petitioner.

(1)   Under the statute as amended by the Act of 1903, the probate court can only have jurisdiction to hold an inquisition as to the sanity of any person, when the person whose mental capacity is in question, is the owner of property. R. S. 1899, as amended, Laws 1903, page 200.   Cox v. Osage County, 103 Mo. 385.   (2) The word property, used in the amended statute, must, we take it, be construed in the light of the provisions of the statute, regarding the estates of insane persons. Kane v. Railroad, 112 Mo. 34; Macke v. Byrd, 131 Mo. 682; Revised Statutes 1899, Chap. 39. (3) The provision in the will of Luther Carter, deceased, in favor of the plaintiff in this case, does not give him any property within the meaning of the statute and it is not property, according to the definitions of that word, as laid down by the courts.   There is nothing for any guardian to take charge of, or anything that said Frank Carter could assign or transfer, or which he could dispose of by will, or which his heirs would inherit.   Smith v. Hutchison, 61 Mo. 87; St. Louis v. Hill, 116 Mo. 533 and authorities cited; Wilson v. Beckwith, 140 Mo. 372; State ex rel. v. Associated Press, 159 Mo. 410; 22 A. & E. Ency. Law (2 Ed.), p. 752, R. S. 1899, sec. 3654   (4)   This section presupposes that there must be affairs to manage.   In this case the subject of the inquiry has no affairs to manage. He has no property within the meaning of the statute. The amendment is to this effect:   "That the probate court shall not have jurisdiction to inquire into the insanity of any person who is the owner of no property." "To own is to hold as property, to have, to possess."   21 A. & E. Ency. Law (2 Ed.), 1025.   22 A. & E. Ency. Law (2 Ed.), 752, 23 A. & E. Ency. Law (2 Ed.), 259.

*Frost & Frost* for defendant.

(1)   That probate courts have exclusive jurisdiction of all matters pertaining to the appointment of

guardians for insane persons. Easley v. Bone, 39 Mo. App. 390; Constitution of Missouri, art. 6, sec. 34. (2) This authority and jurisdiction was limited by acts of 1903, to cases wherein the person whose mental capacity is to be inquired into is the owner of property. Session Laws 1903, p. 200; R. S. 1899, chap. 72, art. 1. (3) The word "personal property" shall include money, goods, chattels, things in action, and evidences of debt. R. S. 1899, sec. 4160, subd. 10. Bouvier defines "property" "as embracing every species of valuable right and interest, including real and personal property, easements, franchises and hereditaments." Lawrence v. Hennessy, 165 Mo. 670; 19 Am. and Ency. Law (2 Ed.), 284-285. (4) Trustee and guardian are different offices. 16 Ency. Law (2 Ed.), 589; Webb v. Hayden, 166 Mo. 39; Gaston v. Hayden, 98 Mo. App. 683. Testator may appoint his own trustee, but as he can not appoint a guardian for a person over twenty-one years of age, he can not indirectly accomplish such purpose by directing a trustee to perform the duties of a guardian. 16 Ency. Law (2 Ed.), 589; In re Wilson, 2 Pa. St. 325. Carter is trustee and not guardian. Father has the right to appoint guardian for minor during minority. R. S. 1899, sec. 3482. But had no power either to adjudge a son incompetent as that must be done by a jury, nor had he power by his will to appoint a guardian for an insane person over twenty-one years of age, and such a devise would be void. Woerner's American Law of Guardianship, 434; Ex parte Ludlow, 3 P. & Wms. 635-8; 16 Ency. Law (2 Ed.), p. 573-574, note 2; Fleming v. Johnson, 26 Ark. 438. The power of the court is superior to will of father. Woerner Am. Law, Guardianship p. 436; Id. p. 434; Ex parte Ludlow, 5 P. & Wms. 635; 16 Ency. Law (2 Ed.), p. 589, note 4; In re Wilson, 2 Pa. St. 325; Canady v. Hopkins, 7 Bush (Ky.), 108. (5) The trustee, Carter, is not the owner of the property in trust, he cannot use, or enjoy it in any

way for his own benefit. He cannot even manage or control it other than under the terms of the trust. Grove v. Robard, 36 Mo. 523; Garesch v. Levering Co., 146 Mo. 436; Hand v. St. Louis, 128 Mo. 207; R. S. 1899, sec. 4580. *Cestui que trust* is equitable owner of "property." Williams on Real Property, p. 162.

ELLISON, J.—This proceeding arises on a petition for a writ of prohibition to be issued to the respondent as probate judge of Clinton county. A demurrer has been filed as to the sufficiency of the petition. It appears from the allegations therein that Luther Carter died in February, 1900, leaving a widow and children as well as a will and testament duly executed and which has since been duly probated. That among the provisions of such will are the following:

"Fourth: My beloved son, Frank Carter, being incompetent I desire that he shall live with my wife, Margaret S. Carter, so long as he may desire, on the land devised to her as aforesaid and for the care, support and maintenance of my said son, Frank Carter, I hereby set apart from my estate if there be a sufficient amount of personal estate, the sum of six hundred dollars as an annuity to be paid to Samuel L. Carter as trustee for the said Frank Carter, and in case the personal estate be not sufficient for such annuity and the annuity provided for Margaret S. Carter as aforesaid I direct that the same be, and I hereby make the same a charge upon the lands hereinafter devised to my said children, Samuel L. Carter, John W. Carter and Mary E. Walters one-third part each. . . .

"Eighth: Having full faith and confidence in my son, Samuel L. Carter, I do hereby nominate and appoint him to be the executor of this my last will and testament and also as trustee to take charge and care for the annuity above provided for my son, Frank Carter, and he is hereby authorized to pay the same out for the

benefit of said Frank Carter without any further authority and I request that he be not required to enter into any bond as my executor."

The Frank Carter mentioned in such provisions is the petitioner herein and the Samuel L. Carter therein mentioned is his brother and he has taken upon himself the duties therein placed upon him by his deceased father. It is alleged that Frank is living with his mother upon the lands devised to her and that the annuity has been regularly paid to him (Samuel) as trustee by the executor and that Samuel has managed said trust fund and paid out and applied all sums necessary to his (Frank's) care, support and maintenance, according to the direction of the will.

The petition then avers that the petitioner has no property and that his rights under the aforesaid clauses of the will are his only means of support. That the respondent as judge of the probate court, on information filed therein charging that the petitioner is a person of unsound mind and incapable of managing his affairs, or of conducting his business, and asking that his sanity be inquired into, to the end that a guardian may be appointed for him. That upon filing said information, the respondent as judge, issued a notice to the petitioner notifying him that inquiry as to his sanity and matters stated in such information would be had in the probate court on December 14, 1905, and that he take notice thereof. That the notice was served upon him and that he appeared before said court and moved to dismiss the proceedings on the ground that such court had no jurisdiction. The motion set out that the petitioner was not the owner of property; that the provision for petitioner was, by the will, given to Samuel L. Carter as trustee, to be under his sole management and control, and that the probate court had no jurisdiction to control said trustee. That said motion was overruled and that over the protest of the petitioner the respondent proceeded

to empanel a jury to inquire into his sanity and that such jury returned a finding that the petitioner was of unsound mind and incapable of managing his affairs. That the respondent, without right or jurisdiction in the premises, appointed Samuel E. Walters guardian of his person and estate under chap. 39, Revised Statutes 1899, to take charge of the trust fund arising under the will and in contravention of its provisions. That said Walters has qualified as such guardian and is attempting to take charge of such fund and to manage and control it under the orders of respondent as such judge of probate. The petition then alleges that the petitioner has no property whereby the probate court or respondent could exercise any jurisdiction in the premises. That being without any property, the whole proceeding carried on before the respondent is without jurisdiction or legal right, and is an unwarranted assumption of judicial power.

A construction of the statute in connection with the provisions of the will above set out will determine the case. The statute (section 3650, Revised Statutes 1899) reads: "If information in writing be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury." But afterwards (Laws 1903, 200) that statute was amended by adding thereto the following: "Provided that the probate court shall not have jurisdiction to inquire into the insanity of any person who is the owner of no property." It is therefore manifest, that if Frank Carter was not the owner of property, the probate court was without authority to hear the proceedings as to his sanity and to appoint a guardian, and the writ should be made absolute.

After full examination of the arguments and briefs

of the respective counsel herein, we have concluded that the will aforesaid did not make the petitioner the owner of property as that expression was intended to be understood by the statute. The word "property," as well as "owner," may be used to convey a meaning something broad and sometimes quite restricted. In its general and commonly accepted sense, ownership and property would necessarily imply the power of sale—*jus disponendi.* [St. Louis v. Hill, 116 Mo. 533, 534.] Doubtless it may and is frequently used in a more restricted sense. In the sense of the statute now under consideration the property which the person thought to be insane must own, is property which he has been managing and controlling, or which he may manage and control in his direction of his affairs. The statute contemplates that if he be found of unsound mind that a guardian of his person *and his property* be appointed who shall take upon himself the management and control of such property. Such guardian is compelled to take charge of said property and make an inventory thereof; and to provide for his support and maintenance. [Secs. 3654, 3662, 3663, 3664, R. S. 1899.] Those statutory provisions are not compatible with the provision made for the petitioner by his father, which respondent claims to be "property" — claims to be an ownership of property. The duties of the guardian "of the person and the estate of the petitioner and the duties of the trustee appointed by the will would be in constant, irreconcilable conflict. By authority of the will, the trustee," is thereby authorized to pay the same out for the benefit of Frank Carter without any further authority." By virtue of the proceedings in the probate court, the guardian is thereby authorized to do the same thing *without any other authority.* The right and power of each would spring from a different source and its exercise by both would be altogether impracticable.

To be an owner of property in the sense of the stat-

ute, the person for whom a guardian is sought to be appointed must have that character of ownership and the property must be that character of property which may pass under the control and supervision of the probate court. The ownership and property must be such as that the guardian can exercise his official duties and functions over it, as they are laid down in the statute. The entire face of the statute shows that the guardian must take exclusive charge of the property and care of the person. There had grown up through the State a number of proceedings of inquiry into the sanity of persons where such persons had no property and the different counties had large bills of costs to pay. Having no property which could be placed in charge of and under the administration of a guardian, the proceedings were mere empty form, with no other result than useless expense to the county and which the county was compelled to pay. [Sec. 3655, R. S. 1899.] Influenced by consideration of such state of affairs, the Legislature took away jurisdiction of the probate courts in all cases where there was no property, nor ownership of property, of the character we have stated.

It must be borne in mind that the provision made for petitioner came upon him, not as his right. He had no vested right to what is here termed property. It came upon him from his father's will. It is not something (by whatever name) which he has acquired, or which he has gotten from some unrestricted source. His father has seen fit to put the legal title, or ownership, in a trustee of his own selection and there the title remains. [Simpson v. Ersiner, 155 Mo. 157.] The father had the undoubted right and legal power to restrict the provision he made as seemed to him best; and to put the administration of such provision in whom he pleased. If he did not act wisely, it is a misfortune inherent in human affairs, but it cannot be corrected in the manner attempted.

It is naturally suggested; what is to become of the trusteeship and the provision going along with it, if the trustee should die, or become recreant to his duty and the like. In such case, the equity powers of a court of competent jurisdiction may be exercised to remedy such unfortunate situation and such power can be called into requisition in various ways. Such power however does not exist in the probate courts. [In re Glover's Est., 127 Mo. 153.]

There is no doubt that so far as this case is concerned, the attempted exercise of jurisdiction by the probate court arose from a commendable desire to faithfully discharge duties and functions which it conceived it had authority to perform. But believing the court did not give a correct interpretation to the statute, we overrule the demurrer.

The cause being then submitted on an answer and agreed statement of facts, we find nothing therein to affect the conclusions reached on the demurrer. Much of the argument has been devoted to that which we have already disposed of and we have not found any reason for changing our conclusions. Considerable stress has been put upon the point that the probate court has a right to pass upon contested facts and though it should err, it ought not to be prohibited in this proceeding. But in this case there are no contested facts. The facts which exist are not controverted and they only present the question of law which arises on admitted facts. In such cases the writ of prohibition may issue. We decided in Coleman v. Dalton, 71 Mo. App. 14, that though a probate court had no jurisdiction to inquire into the sanity of one not a resident of the county, yet where the question of residence was a matter of dispute between the parties and formed an issue of fact the probate court had jurisdiction to pass on the question thus presented and that a mere erroneous finding of the fact would not justify prohibition. But no such decision would have

been made if there had been facts conceded showing the party was a non-resident.    In this case there has not been and is not now, any dispute as to the facts.    The dispute is as to the law arising on the facts and we have decided that under the law of the case the probate court was without jurisdiction.    Notwithstanding a court may have jurisdiction of a class of cases to which a particular case belongs, yet it may not have jurisdiction of the particular case.    Thus a court may have jurisdiction of contested election cases, yet if there be no notice of contest in a particular case the court would be without jurisdiction and may be prohibited.    [State ex rel. v. Spencer, 164 Mo. 48, and 166 Mo. 279.]

Neither will it do to say that because a court may have jurisdiction of a class of cases to which the case before it belongs, that then it has right to decide it had jurisdiction of that case when the record conclusively shows that it had not, and thus remit the aggrieved party to his appeal.    [State ex rel. v. Sale, 188 Mo. 493; State ex rel. v. Bradley, 193 Mo. 33.]    The right to an appeal is not always an adequate remedy and does not always prevent relief by prohibition.    [State ex rel. v. Fort, 107 Mo. App. 328; State ex rel. v. Eby, 170 Mo. 497.]

It does not necessarily follow that because a court may have jurisdiction to decide whether it has jurisdiction (as it is sometimes expressed) the party aggrieved by such decision must be conclusively denied relief by prohibition.    The results of numerous cases determined by the Supreme Court show that such a rule does not prevail and that if it did different conclusions would have been reached in those cases.    [See, among others, State ex rel. v. Wood, 155 Mo. 425; State ex rel. v. Spencer, 166 Mo. 271.]    If that was the law, the effective relief and force of the writ would be cut in half.

There were other suggestions made by briefs and in argument, but we do not consider them as affecting our

conclusions. A peremptory writ will issue. The other judges concur.